## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**TRAVIS JAMES MORIN**                **CASE NO.  6:20-CV-00592**

**VERSUS**                                          **JUDGE JUNEAU**

**M BOFILL DUHE ET AL**                **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss, or Alternative Motion to Stay, filed by M. Bofill Duhe, 16th Judicial District Attorney ("DA Duhe"). (Rec. Doc. 13). Plaintiff opposed the Motion (Rec. Doc. 16), and DA Duhe replied (Rec. Doc. 19). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Mr. Duhe's Motion be GRANTED.

## Factual Background

Plaintiff filed this suit pursuant to 28 U.S.C. §1983 against Blaise Smith, Sheriff of St. Mary Parish, and M. Bofill Duhe, District Attorney for the 16th Judicial District, following his arrest in May 2019. (Rec. Doc. 1). He alleged that on May 23, 2019, he was stopped in a residential area, apparently for improper lane usage, and that a subsequent canine search revealed Xanax pills and cash. (Rec. Doc. 1, ¶16;

21; 24). He challenges the search of his vehicle and the officials' seizure of $17,000 as unconstitutional on various grounds. (Rec. Doc. 1, ¶10-15; 19-29). He alleged that he had legal possession of the cash seized during the stop as his Social Security funds. (Rec. Doc. 1, ¶6-9; 30). Although the Complaint is somewhat ambiguous as to which allegations pertain to each Defendant, the Court interprets that St. Mary Parish Sheriff deputies initially stopped and searched Plaintiff and that DA Duhe thereafter initiated prosecution and forfeiture proceedings in state court. Plaintiff's §1983 action appears to seek redress for unconstitutional search and seizure under the Fourth Amendment and for excessive fines by way of forfeiture under the Eighth Amendment.

DA Duhe filed the instant Motion to Dismiss urging the Court to abstain from exercising jurisdiction in light of ongoing related state court proceedings and seeking dismissal on the grounds of Eleventh Amendment, absolute, and/or qualified immunities. Plaintiff did not substantively oppose DA Duhe's abstention or dismissal arguments. Rather, Plaintiff's opposition appears to rest on the merits of his allegations. (Rec. Doc. 16).

## **Law and Analysis**

### I. **Law applicable to Rule 12(b)(6) motions to dismiss and documents to be considered.**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the

pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Ordinarily, in ruling on a Rule 12(b)(6) motion, the court is limited to consideration of the allegations in the complaint and any exhibits attached thereto;

however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of documents which are attached to the plaintiff's opposition, where no party questions the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008).

The Court finds that the records of the underlying state court proceedings are subject to consideration at the Rule 12(b)(6) stage. The records, attached to DA Duhe's Motion, include the Bill of Information and Amended Bill of Information for Plaintiff's underlying charges for possession with intent to distribute a Schedule IV controlled dangerous substance, possession of a Schedule II controlled dangerous substance and drug paraphernalia, improper lane usage, and following too closely. (Rec. Doc. 13-2; 13-3). DA Duhe also submitted the Extract of Minutes from state court proceedings setting trial in these matters for November 16, 2020. (Rec. Doc.

13-4). Plaintiff does not contest these public records (Rec. Doc. 16, p. 1), the substance of which is also referenced in the Complaint. Thus, the Court will consider these records.

A key point of contention is the propriety of the state court forfeiture proceedings. DA Duhe attached a copy of these proceedings to his Motion. (Rec. Doc. 13-5). Plaintiff does not oppose the substance of these records, and, indeed, attached a portion of these records (his affidavit in opposition to the forfeiture) to the Complaint. (Rec. Doc. 1-1). Thus, the Court will also consider these records.

## II.    Whether the Court should abstain under *Younger*.

"The *Younger*[1] abstention doctrine provides that federal equitable relief is generally unavailable against pending state criminal prosecutions except in narrowly defined and unusual circumstances." *Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir. 1995). The Supreme Court has extended the doctrine to state civil proceedings that were "both in aid of and closely related to criminal statutes," such as forfeiture proceedings, as such cases involve the same concerns of comity and federalism present in state criminal proceedings. *Id*., quoting *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

---

[1]     *Younger v. Harris*, 401 U.S. 37, 43–47 (1971).

Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018), *cert. denied sub nom. Gates v. Reed,* 139 S. Ct. 1171, 203 L. Ed. 2d 198 (2019) (citation omitted). "Where those three criteria are satisfied, a federal court may enjoin a pending state-court criminal proceeding only if: (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it, or (3) where other extraordinary circumstances threaten irreparable loss [that] is both great and immediate." *Id*., citing *Younger*, 401 U.S. at 45, 53–54, 91 S.Ct. 746; *and Moore v. Sims*, 442 U.S. 415, 432–33 (1979) (internal quotations omitted).

In *Alexander v. Ieyoub* the Fifth Circuit recognized that *Younger* abstention does not apply to suits seeking only damages, such that abstention was inappropriate in a §1983 case seeking only monetary damages for the state's delay in bringing forfeiture proceedings for the plaintiff's seized vehicle. *Alexander*, 62 F.3d at 713.

By contrast, abstention would be appropriate for cases seeking to enjoin state action, such as suits seeking release of seized property. See *id*.

The Complaint in this case is ambiguous in that Plaintiff complains that "Defendants should have returned the funds as they are compelled to do to avoid civil liability…" (Rec. Doc. 1, ¶32). Likewise, many allegations condemn Defendants' seizure of money apparently found with the drugs in the vehicle during the search. (See e.g. Rec. Doc. 1, ¶22-24; 29-30). The Complaint can also be interpreted as an attempt to enjoin the state court from prosecuting the charges against him and maintaining forfeiture proceedings. However, Plaintiff's prayer for relief seeks only "damages, punitive and or exemplary damages and attorney fees…" (Rec. Doc. 1, p. 10-11).

Insofar as Plaintiff's suit seeks to enjoin Defendants from prosecuting him and maintaining the forfeiture proceedings, the Court finds that abstention is proper. First, because state proceedings are pending, with a trial date set for November 16, 2020 (Rec. Doc. 13-4, p. 1), any action by this Court in Plaintiff's favor would interfere with the state court proceedings. Second, Louisiana has an interest in regulating the prosecution of controlled dangerous substance offenses, including related forfeiture proceedings. Third, Plaintiff may raise the same constitutional challenges to La. R.S. 40:2603 *et seq* in the state court proceedings as now brought before this Court. (See Rec. Doc. 1, ¶28).

The Court further finds that the exceptional circumstances warranting the exercise of jurisdiction under *Younger* are not present here. First, although Plaintiff has conclusorily alleged that the state court proceedings were brought in bad faith and to harass him, the Complaint does not set forth any specific factual allegations in support thereof. Although Plaintiff alleged that Defendants continued to charge under La. R.S. 40:1041 (regarding transactions involving proceeds from drug offenses) even after receipt of Plaintiff's opposition to the forfeiture and Social Security award letter indicating the source of the funds, the Court finds this does not sufficiently allege bad faith, as contemplated by the exception to *Younger* abstention. (Rec. Doc. 1, ¶30).

Next, the Court finds that the constitutionally challenged provisions, La. R.S. 40:2603-2608 (Rec. Doc. 1, ¶28), are not so "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it" to warrant this Court's jurisdiction. Indeed, at least one court has held that the Seizure and Controlled Dangerous Substances Property Forfeiture Act is generally not unconstitutional under Louisiana's Constitution. *State v. Clark*, 94-598 (La. App. 3 Cir. 2/21/96), 670 So. 2d 493, 499, *writ denied,* 96-1331 (La. 2/7/97), 688 So. 2d 495. Finally, the Complaint allegations present no extraordinary circumstances threatening irreparable loss.

Plaintiff's allegations that the forfeiture of $17,000 is illegal under *Timbs v. Indiana* does not justify application of the *Younger* exception. The Supreme Court in *Timbs* extended the Eighth Amendment's protection against excessive fines to state action. *Timbs v. Indiana*, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019). "The Excessive Fines Clause restricts the Government's power to obtain ownership of seized property, which generally occurs through civil forfeiture proceedings (*in rem* proceedings against the assets themselves) and criminal forfeiture proceedings (proceedings against the owner of the assets)." *Schanzle v. Haberman*, No. 19-51073, 2020 WL 5948516, at *4 (5th Cir. Oct. 7, 2020). Plaintiff contends that the seizure of $17,000 is excessive, because, he alleges, the maximum fine for his crimes ("minor traffic offenses and possession of a small number of Xanax") is $5,000 and/or five years at hard labor. (Rec. Doc. 1, ¶8; 27). Plaintiff's *Timbs* argument is constitutional and may be properly raised in defense of the forfeiture proceedings in state court. Thus, the Court finds that *Younger* abstention is warranted to the extent the Complaint seeks to enjoin the state court proceedings, including the criminal prosecution and pending forfeiture.

Insofar as Plaintiff seeks monetary damages pursuant to §1983 for wrongful seizure, his suit is premature, because the undisputed forfeiture proceeding records show that the money sought has not yet been adjudicated as forfeited. (Rec. Doc. 13-5). "[A] court has no power to decide disputes that are not yet justiciable." *Lopez v.*

*City of Houston*, 617 F.3d 336, 341–42 (5th Cir. 2010). "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Id.*, quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81 (1985). Accordingly, the Court finds that any action by this Court would be premature.

For these reasons alone, the Court finds that DA Duhe's Motion to Dismiss should be granted and that Plaintiff's suit should be dismissed. However, for the sake of the District Court's review, the Court will address DA Duhe's alternative arguments.

### III.    Whether DA Duhe is entitled to Eleventh Amendment immunity.

As an alternative ground for dismissal, DA Duhe relies upon Eleventh Amendment immunity, which shields state actors from civil liability in federal court. This argument applies to the extent Plaintiff sued DA Duhe in his official capacity.[2] See *Mairena v. Foti*, 816 F.2d 1061, 1064, fn. 1 (5th Cir. 1987). Official capacity suits against district attorneys are generally regarded as suits against the local government entity. *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999)

---

[2]    The Complaint is unclear as to whether DA Duhe is sued in his official and/or individual capacities.

The Fifth Circuit has held that Louisiana prosecutors are local government officials, as opposed to state officials, and are thus not entitled to sovereign immunity. *Spikes v. Phelps*, 131 F. App'x 47, 49 (5th Cir. 2005), relying on *Burge v. Parish of St. Tammany,* 187 F.3d 452, 467–68 (5th Cir.1999). While acknowledging that the Fifth Circuit's opinion in *Spikes* and its predecessors appears to foreclose his position, DA Duhe advocates for a break from precedent. DA Duhe urges the Court to instead follow *Esteves v. Brock*, 106 F.3d 674, fn.8 (5th Cir. 1997), in which the Fifth Circuit held that a Texas district attorney was entitled to immunity insofar as she was acting on behalf of the state when exercising peremptory challenges. In *Spikes*, the court justified the different treatment of Louisiana district attorneys in that case and Texas district attorneys in *Esteves* based upon "interpretation of Texas law concerning the role of a district attorney within the framework of state government." *Spikes*, 131 Fed.Appx. at 49. DA Duhe posits that Louisiana and Texas law do not differ regarding the role of a district attorney vis-à-vis state government. The Court agrees to some extent, but, as explained below, the Court is otherwise bound by sound Fifth Circuit precedent.

In *Crane v. Texas*, 766 F.2d 193, 194-95 (5th Cir. 1985), the court examined Texas laws pertaining to the office of the district attorney, finding the position had both state and local attributes. In considering a district attorney policy regarding misdemeanors, the court found the district attorney's policies held greater weight for

the county, rather than the state, such that the local government could be civilly liable for constitutional violations caused by the policy. *Id*. *Esteves* later found that the district attorney's actions in that case (exercise of peremptory challenges) were state-based and thus entitled to Eleventh Amendment immunity. *Esteves,* 106 F.3d at fn. 8.

In the meantime, pre-*Esteves*, the Fifth Circuit decided *Mairena v. Foti*, which aligned Louisiana district attorneys with Texas district attorneys under the *Crane* analysis. *Mairena*, 816 F.2d at 1064, fn. 1. Subsequent opinions, *Spikes* and *Burge*, relied on *Mairena* in holding that Louisiana district attorneys were not immunized by the Eleventh Amendment. *Spikes*, 131 F. App'x at 49 (5th Cir. 2005), citing *Burge,* 187 F.3d at 467–68; *Burge*,187 F.3d at 466. Further complicating matters is *Chrissy v. Mississippi Dept. of Public Welfare*, in which the Fifth Circuit held that Mississippi district attorneys were entitled to state immunity, because the Mississippi district attorney's office was state-funded, and the district attorney was authorized to address statewide concerns, even after a change of venue. *Chrissy F. by Medley v. Mississippi Dept. of Public Welfare*, 925 844, 849 (5th Cir. 1991).

The reasoning behind the divergence of opinions as between Louisiana, Texas, and Mississippi district attorneys is not readily understood without a thorough reading of *Hudson v. City of New Orleans*, in which the Fifth Circuit undertook a sweeping analysis of Louisiana law in order to "clarify why the Eleventh

Amendment does not immunize the Orleans Parish District Attorney's office."
*Hudson*, 174 F.3d at 681. In *Hudson*, the court carefully examined constitutional and legislative aspects of the New Orleans District Attorney's office pursuant to the six-factor test enunciated by the Supreme Court in *Clark v. Tarrant County* for determining whether a government entity is entitled to immunity:

1. Whether the state statutes and case law view the agency as an arm of the state;

2. The source of the entity's funding;

3. The entity's degree of local autonomy;

4. Whether the entity is concerned primarily with local as opposed to statewide problems;

5. Whether the entity has the authority to sue and be sued in its own name; and

6. Whether the entity has the right to hold and use property.

*Id*., citing *Clark v. Tarrant County,* 798 F.2d 736, 744–45 (5th Cir.1986).

After examining relevant Louisiana law and evidence adduced at the district court's hearing, the court found the first factor to be neutral in that state law considered district attorneys as officers of the state, yet also considered them as part of local government (much like Texas district attorneys discussed in *Crane*). *Id*. at 686. The court emphasized that the second factor—source of funding—should be afforded the most weight, because the ultimate inquiry is whether a judgment against

the district attorney would be paid with state funds. *Id*. at 687-88.[3] After a detailed discussion of Louisiana statutes and evidence regarding funding of the New Orleans district attorney's office, the court concluded that New Orleans would be responsible for payment of any judgment awarded in the §1983 suit. *Id*. at 689. This conclusion proved decisive, with the court noting, "If we cannot say that the Orleans Parish District Attorney's office is the 'alter ego' of the state, we cannot provide it with the protections of the Eleventh Amendment." *Id*.

The third factor tilted slightly towards Eleventh Amendment immunity due to a certain degree of state oversight authorized by the Louisiana constitution. *Id*. at 690. The fourth factor weighed against immunity, because the district attorney's office was primarily concerned with local problems. *Id*. at 690-91. The fifth and sixth factors, regarding the district attorney's office capacity to sue and be sued and its right to hold and use property, had little effect on the conclusion. *Id*. at 691.

*Hudson* did not ignore the earlier *Esteves* opinion, but, rather, briefly addressed it in a footnote to its threshold citation to *Clark*. *Id*. at 681, fn. 1. There, the court explained that the district attorney's function (i.e. whether he acted on behalf of the state or the local entity) is only to be considered in the context of §1983

---

[3]    This factor helps explain why *Chrissy* found Eleventh Immunity: Mississippi district attorneys were state-funded, and the plaintiff provided no evidence to prove otherwise. See discussion in *Hudson*, 174 F.3d at 682.

county liability (as was the case in *Esteves*), but is not to be considered in the Eleventh Amendment context (as was the case in *Crane*). *Id*. Only the Eleventh Amendment analysis is at immediate issue here. Even still, this Court is hard-pressed to find a satisfying reason for the *Esteves* divergent statement: "As a state officer acting in her official capacity, however, [the district attorney] is protected by the eleventh amendment from suit under §1983 for money damages." *Esteves*, 106 F.3d at 677, fn. 8. The Court surmises that perhaps the proposition, set forth in a two-sentence footnote, has been expanded beyond which the court could have anticipated. Notably, in the same year it decided *Hudson*, the Fifth Circuit expressly affirmed *Hudson* as the rule that Louisiana district attorneys do not enjoy Eleventh Amendment immunity. *Burge*, 187 F.3d at 466.

Notwithstanding that DA Duhe's *Esteves* argument is thought-provoking, the Court is bound by the *Hudson* precedent, an opinion which this Court views as imminently sound. Nonetheless, the Court cautions that this ruling should not be interpreted as the "be-all-end-all" determination. *Hudson* was decided after an evidentiary hearing in which the court considered testimony from the New Orleans District Attorney regarding the funding of its department and whether the state or New Orleans would likely be responsible for a judgment. This Court assumes that the funding of judgments would be the same for the 16th Judicial District Attorney, though discovery could reveal otherwise. In that event, DA Duhe should not be

15

precluded from re-raising the defense of Eleventh Amendment immunity should the facts unfold favorably.

For the reasons set forth in *Hudson,* the Court finds that DA Duhe is not protected by the Eleventh Amendment against Plaintiff's §1983 claims for alleged wrongful search and seizure. But can the same be said of monetary damages arising out of wrongful seizure pursuant to the forfeiture statutes? La. R.S. 40:2602 explicitly states that property seized by the district attorney is done so on behalf of the state:

> [T]he appropriate district court has jurisdiction under the provisions of this Chapter if the property for which forfeiture is sought is within this state at the time the action is filed or the courts of this state have personal jurisdiction of an owner of or interest holder in the property.

See also La. R.S. 40:2615, providing that, following forfeiture proceedings, "the state has clear title to the forfeited property interest. Title to the forfeited property interest and its proceeds shall be deemed to have vested in the state on the commission of the conduct giving rise to the forfeiture under this Chapter." As such, it is arguable that a money judgment for wrongful forfeiture should be satisfied from the state's treasury. Under the *Hudson* analysis, then, DA Duhe could be considered an alter ego of the state in these circumstances. The Court is not prepared to definitively answer these lingering questions at the Rule 12(b)(6) stage. Rather,

should the case otherwise proceed, these issues should be fully developed in the course of discovery and dispositive motions.

**IV.    Whether Plaintiff has stated a claim against DA Duhe in his official capacity.**

Having found that DA Duhe, in his official capacity, is not protected by Eleventh Amendment immunity, the Court must next consider whether Plaintiff has stated a claim against DA Duhe in his official capacity. Official capacity suits under §1983, are governed by the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). See *Burge*, 187 F.3d at 470-71. The Fifth Circuit summarized *Monell* municipal liability principles as follows:

> It is well established that a city is not liable under § 1983 on the theory of respondeat superior. A municipality is liable only for acts directly attributable to it "through some official action or imprimatur." To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."

> The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker.

> Under the second prong, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-

making authority." This circuit has long distinguished between final decisionmaking authority and final policymaking authority. A municipal policymaker is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law.

The third prong requires a plaintiff to prove "moving force" causation. To succeed, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." That is, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Deliberate indifference is a high standard—"a showing of simple or even heightened negligence will not suffice."

*Valle v. City of Houston,* 613 F.3d 536, 541–42 (5th Cir. 2010) (citations omitted).

The Court agrees with DA Duhe that the Complaint is devoid of factual allegations presenting an official district attorney policy or custom which was the moving force for any alleged constitutional violation. Assuming, without deciding, that Plaintiff's allegations support a claim that a constitutional violation occurred, the Court finds that the allegations do not set forth any specific facts regarding an official policy or custom. Accordingly, the Court recommends that Plaintiff's claims against DA Duhe in his official capacity be dismissed.

## V.    **Whether DA Duhe is entitled to absolute immunity.**

Prosecutorial immunity protects district attorneys sued in their individual capacities. *Mairena*, 816 F.2d at 1064, fn. 1. Prosecutors have enjoyed absolute immunity from §1983 suits since the Supreme Court decided *Imbler v. Pachtman*, 424 U.S. 409 (1976). *Imbler* justified the possibility that victims of prosecutorial misconduct could be left unredressed with the notion that to hold otherwise would "prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*. at 427-28. As an alternative to civil redress, *Imbler* recognized that prosecutors can still be punished criminally and are further held responsible by the professional association of their peers. *Id*. at 429.

The Fifth Circuit recently summarized the law applicable to prosecutor immunity as follows:

> Prosecutors may be shielded by absolute immunity for acting as the state's advocate in criminal cases. But immunity is not automatic. Rather, prosecutors are absolutely immune only "for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Conversely, "a prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" In sum, prosecutors are not entitled to absolute immunity when "functioning as the equivalent of a detective rather than as an advocate preparing for trial."

*Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020) (citations omitted).

Absolute immunity does not flow from one's position as a district attorney, but, rather, from the function he performs in that role. *Alexander v. Ieyoub*, 997 F.2d 881 (5th Cir. 1993). Absolute immunity attaches to the prosecutorial function, which involves the advocate's preparation for the initiation of a prosecution or for judicial proceedings, rather than an investigatory function, which is traditionally associated with police work. *Singleton v. Cannizzaro*, 956 F.3d 773, 782 (5th Cir. 2020). The Fifth Circuit has also denied absolute immunity to district attorneys based on certain conduct in forfeiture proceedings. *Alexander,* 997 F.2d at p. 1. However, the court agreed with the Third Circuit that "a prosecutor must possess absolute immunity when initiating and presenting the state's case in a civil forfeiture action, but ... that the retention and management of property obtained under the forfeiture statutes is an administrative duty which is covered by no more than qualified immunity." *Id*., discussing *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991). In other words, the court held, "some aspects of a prosecutor's participation in activities related to forfeiture, like his participation in a search pursuant to warrant, may not be part and parcel of his prosecutorial duty and should gain no more than qualified immunity." *Id*. (citation omitted).

Based on the foregoing, DA Duhe is entitled to absolute immunity for any claims arising out his initiation and presentation of the state's case for forfeiture, but he could be entitled to only qualified immunity for claims arising out of other

forfeiture proceeding activities, particularly those verging on administrative or investigatory. Plaintiff alleges the following facts conceivably related to DA Duhe and the forfeiture proceedings:

- "Both defendants have acted in BAD FAITH after receiving the opposition and letter showing the origin of [Plaintiff's] cash in his backpack, known full well that the maximum fine is $5,000 and or five (5) years at hard labor." (Rec. Doc. 1, ¶8, verbatim).

- "The details of the inventory of cash were not disclosed in the discovery furnished plaintiff and nor video or audio discs were provided of any aspect of this arrest and seizures, only the amount and denomination of the bills until 6APR20 and the crime lab report until 7MAY20." (Rec. Doc. 1, ¶23).

- [S]eizure of $17,000 or more for minor traffic offenses and possession of a small number of Xanax is illegal under the recent United States Supreme Court Case captioned *Timbs v. Indiana*…[4] (Rec. Doc. 1, ¶27).

---

[4]     In *Timbs*, the Supreme Court extended Eighth Amendment protections against excessive fines to forfeiture proceedings in state courts seeking property worth disproportionately more than the applicable fine. *Timbs v. Indiana*, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019). Here, Plaintiff argues that the seized cash is worth far more than the applicable fines for the charges imposed.

- DA Duhe was "well aware of [his] obligation to return seized property to its rightful owner[.]" (Rec. Doc. 1, ¶29).

- "Both defendants acted in bad faith once they were served the opposition and attached Social Security Administration award letter of plaintiff and continued to charge under LA RS 40:1041." (Rec. Doc. 1, ¶30).

The Court finds that the foregoing allegations appear rooted in the district attorney's initiation and presentation of the state's forfeiture case, such that DA Duhe should be afforded absolute immunity. Plaintiff challenges the amount of the forfeiture and the actual pursuit of the forfeiture. Both of these aspects of forfeiture proceedings are concerned with the forfeiture proceedings—not the administrative aspects contemplated in *Alexander* or other investigatory functions. Thus, the Court finds that, should the case proceed, DA Duhe is entitled to absolute immunity to the extent Plaintiff sued him individually.

## Conclusion

For the reasons discussed herein, the Court recommends that DA Duhe's Motion to Dismiss (Rec. Doc. 13) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 2nd day of November, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE